UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO.  07-38

SANDI NEACE, As Administrator and Personal
Representative of the Estate of Matthew Collins, et al.,                    PLAINTIFFS,

v.                              **OPINION AND ORDER**

UNITED GROUP SERVICES, INC., et al.,                           DEFENDANTS.

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion for Summary Judgment (Rec. No. 54) filed by

the Defendant, United Group Services, Inc. ("UGS, Inc."); the Motion to Dismiss (Rec. No. 65) filed

by the Defendant United Group Services, LLC ("UGS, LLC"); and the Motion for Judgment on the

Pleadings (Rec. No. 72) filed by the Defendant Maxim Crane Works, L.P. ("Maxim") and joined by

Defendants UGS, LLC and North American Stainless ("NAS").

## I.      FACTS.

In their Complaint, the Plaintiffs assert that Rickie Dilts and Matthew Collins were employed

by the Defendant UGS, Inc.  (Rec. No. 1, Complaint, ¶ 2).  The Plaintiffs further allege that, on or

about July 28, 2006, Dilts and Collins were assigned to work at Defendant NAS's plant in Carroll

County, Kentucky. (Rec. No. 1, Complaint, ¶¶ 2, 15). They further assert that Dilts and Collins were

working approximately 80 feet from the ground on the assembly of the roof of a "doghouse" when

the metal panel they were supported by fell to the floor, causing the Plaintiffs to fall eighty feet to

the concrete floor. (Rec. No. 1, Complaint, ¶ 16). The Plaintiffs assert that Dilts and Collins died as

a result of the fall. (Rec. No. 1, Complaint, ¶ 17).

The Plaintiffs include Sandi Neace, Collins' mother,  as the administrator of Collins' estate;

and Tina Dilts, Rickie Dilts' wife, as administrator of Dilts' estate. The remaining Plaintiffs are Tina Dilts, individually, and Dilts' children.

The Plaintiffs named five defendants: UGS, Inc.; NAS;[1] UGS, LLC; Siemens Energy & Automation, Inc. ("Siemens");[2] and Maxim.

The Plaintiffs assert that UGS, Inc. was the employer of Collins and Dilts.(Rec. No. 1, Complaint, ¶ 2). They further assert that NAS; UGS LLC; Siemens; and Maxim were "in control of the jobsite. . . . ." (Rec. No. 1, Complaint, ¶ 19).

The Plaintiffs assert a negligence claim against the Defendants. (Rec. No. 1, Complaint, Count I). The Plaintiff Tina Dilts, in her individual capacity, asserts that she is entitled to recover damages for loss of spousal consortium under KRS 411.145. (Rec. No. 1, Complaint, Count III). The Plaintiffs also assert that they are entitled to recover damages for pre-impact fear of death. (Rec. No. 1, Complaint, Count IV).

## II.     UGS, INC.'S MOTION FOR SUMMARY JUDGMENT (Rec. No. 54).

UGS, Inc. moves for summary judgment of all claims asserted against it. Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In its Motion for Summary Judgment, UGS, Inc. argues that the Plaintiffs are barred from

---

[1] In their Complaint, the Plaintiffs incorrectly identified North American Stainless as North American Stainless, Inc. The name was corrected by Agreed Order (Rec. No. 39).

[2] In their Complaint, the Plaintiffs incorrectly identified Siemens Energy & Automation, Inc. as Voest-Alpine Industries, Inc. The name was corrected by Agreed Order (Rec. No. 39).

bringing any tort claim because they received workers' compensation death benefits from UGS Inc.'s insurance carrier. For this argument, UGS, Inc. relies on the exclusivity provision of the Kentucky's Workers' Compensation Act, KRS 342.0011, *et seq*. In relevant part, the exclusivity provision states the following:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. . .

KRS § 342.690(1).

UGS, Inc. recognizes that there is an exception to the exclusivity provision where an employee's injury or death results from the "deliberate intention of his employer to produce such injury or death. . . ." KRS 342.610(4). For purposes of its Motion for Summary Judgment, UGS, Inc. has assumed that this exception to the exclusivity provision applies to the Plaintiffs' claims.

UGS, Inc. points out, however, that, even in cases of deliberate intention, the employee or his dependants must choose between pursuing a tort action or recovering workers' compensation benefits under the statute. The statute provides:

> If injury or death results to an employee through the deliberate intention of his employer to produce such injury or death, *the employee or his dependents may take under this chapter, or in lieu thereof, have a cause of action at law against the employer as if this chapter had not been passed*, for such damage so sustained by the employee, his dependents or personal representatives as is recoverable at law. *If a suit is brought under this subsection, all right to compensation under this chapter shall thereby be waived as to all persons. If a claim is made for the payment of compensation or any other benefit provided by this chapter, all rights to sue the employer for damages on account of such injury or death shall be waived* as to all persons.

KRS 342.610(4) (emphasis added).

3

### A.     UGS, Inc.'s Failure to Obtain a Certificate of Authority.

In their Response, the Plaintiffs point to the Kentucky statute prohibiting foreign corporations who are transacting business without a certificate of authority from "maintain[ing] a proceeding in any court in this state until it obtains a certificate of authority."  KRS 271B.15-020(1).  There does not appear to be any dispute that UGS, Inc. does not have a certificate of authority. However, UGS, Inc. is not maintaining this proceeding.  It is, instead, defending it.  The same Kentucky statute specifically provides that , "(5) [n]otwithstanding subsections (1) and (2) of this section, the failure of a foreign corporation to obtain a certificate of authority shall not impair the validity of its corporate acts or prevent it from defending any proceeding in this state." KRS § 271B.15-020(5). Accordingly, UGS, Inc. may present a defense in this proceeding.

The Plaintiffs also appear to argue that UGS, Inc. is not protected under the exclusive remedy provisions of Kentucky's Workers' Compensation Act because it has failed to obtain a certificate of authority.  The Plaintiffs cite no case law for this proposition and the Court has found none. Accordingly, the Court rejects this argument.

### B.     Willful and Unprovoked Physical Aggression Exception.

In their Response, the Plaintiffs also argue that the exclusivity provision of the Kentucky Workers' Compensation Act does not protect UGS, Inc. because of the following exception contained in the provision:

> [T]he exemption from liability given an employee, officer or director or an employer or carrier shall not apply in any case where the injury or death is proximately caused by the willful and unprovoked physical aggression of such employee, officer or director.

KRS 342.690(1)(emphasis added).

4

The Plaintiffs argue that, in cases of willful and unprovoked physical aggression of an employee, officer or director, the exclusivity provision does not apply, regardless of whether the employee's estate received workers' compensation benefits.

But the Plaintiffs have not alleged any physical aggression by a UGS, Inc. employee. In their response to the Motion for Summary Judgment, the Plaintiffs argue that certain employees refused "to provide basic safety lines to insure Matthew Collins would not fall," that certain employees gave "instructions to speed up the work to meet deadline, regardless of the safety implications" and that certain employees gave instructions "for the crane operator to pull away prior to Matthew Collins completing the welding on the panel for which he was working."

However, none of these acts constitutes an act of willful and unprovoked physical aggression. The Plaintiffs appear to argue that discovery is necessary to determine if there were any such acts. As support for this argument, the Plaintiffs cite *Haines v. BellSouth Telecommunications, Inc.*, 133 S.W.3d 497 (Ky. App. 2004). In that case, the Kentucky Court of Appeals affirmed the trial court's ruling granting the employer summary judgment. There, the plaintiff's co-employee sounded a boat horn when standing about one foot away from the plaintiff, causing the plaintiff to suffer serious hearing loss and permanent nerve damage. *Id*. at 498.

Thus, in that case there was an act of "physical aggression." The issue was whether it was "willful and unprovoked." *Id*. at 499. In making that determination, the Court of Appeals held that the issue was whether the co-employee's actions were "so far removed from those which would ordinarily be anticipated by the employer that it can be said that the employee causing the injury has removed himself from the course of his employment or that the injury did not arise out of the employment." *Id*. at 500.

5

In this case, in contrast, the Plaintiffs have not alleged any acts of "physical aggression" by UGS, Inc. employees. Accordingly, the exception to the exclusive remedy provisions of KRS 342.690(1) for "willful and unprovoked acts of physical aggression" does not apply.

### C.   Whether Neace's Acceptance of Benefits for the Collins' Estate is an Election to Proceed under the Workers' Compensation Act.

In her response, the Plaintiff Sandi Neace, who is the administrator of Collins' estate, argues that the estate should not be deemed to have elected to proceed under the Workers' Compensation Act in lieu of filing a civil court action under KRS 342.610(4) because the estate never filed a claim for benefits and no settlement agreement between the parties was ever filed with the state.

UGS, Inc. recognizes that Neace never made a formal claim for workers' compensation benefits on behalf of the estate but argues that, when Neace cashed the check that AmComp, UGS, Inc.'s insurance company, mailed to her, she made the election for the estate to proceed under the Workers' Compensation Act, waiving its right to pursue a civil action as provided under KRS 342.610(4).

Neace argues that cashing the check should not constitute a waiver of the estate's right to pursue a civil action because it was not a knowing waiver.(Rec. No. 62, Neace Response at 11). With her response, Neace attaches her own affidavit in which she states that Annette Squires, an AmComp adjuster, contacted Neace soon after her son's death. She states that Squires informed her that, under Kentucky law, Collins' estate was only entitled to $62,002.42.

Neace further states that Squires told Neace that she needed to send AmComp a death certificate. Neace states that she sent AmComp a death certificate as instructed and then received a check in the mail. She states that Squires never told her that she "was making an election to

6

receive workers' compensation benefits in lieu of filing a civil action."

With its Motion for Summary Judgment, UGS, Inc. submits Squires' affidavits which detail the manner in which benefits were delivered by the insurance company to the Collins' and Dilts' estates.

With regard to the Dilts' estate, Squires sent a letter to Tina Dilts informing her that AmComp handled the workers' compensation claims for UGS, Inc and that Tina Dilts was eligible for workers' compensation benefits. The letterhead identified AmComp as an insurance company. Attorney Merrit K. Alcorn then sent a letter to Squires stating that Alcorn would be representing Tina Dilts and her children "with regard to their recent claim." Squires then sent Alcorn a Form 110-F, Agreement as to Compensation and Order Approving Settlement stating that a lump sum death benefit check for $62,002.42 had been issued that day. Squires then sent Alcorn a check for that amount and Alcorn sent a signed Form 110-F Agreement to Squires. The agreement was later filed and approved by an Administrative Law Judge.

In contrast, with regard to Collins' estate, on July 31, 2006, Norma White, a claims assistant with AmComp, sent a letter addressed to "Sandy Collins" but apparently intended for Neace, stating that "we have received the claim on above claimant." It is unclear what "claim" the letter is referencing. There does not appear to be any dispute that Neace never filed a claim for workers' compensation benefits. The letterhead stated simply "AmComp, Inc." but neither the letter nor the letterhead explained that AmComp was an insurance company that handled workers' compensation claims for UGS, Inc., as had been the case with the correspondence directed at Tina Dilts.

The next piece of correspondence submitted is a letter dated August 17, 2006 from Squires addressed to Neace stating that enclosed was a check for $62,002.42 "representing death benefits for

your son's workers compensation claim."  Again, it is unclear what it meant by "your son's workers compensation claim."

On February 2, 2007, attorney Jack Gatlin wrote Squires stating this his office represented Collins' family.  Enclosed was an OSHA report which Gatlin stated detailed OSHA violations by UGS, Inc.  In the letter Gatlin asserted that, due to this evidence, the Collins' estate was entitled to an additional $74,402.90 in workers compensation benefits.

Considering all of the evidence in the record at this point, there is an issue of fact as to whether Neace knew at the time she cashed the check AmComp sent to her that accepting workers' compensation benefits waived the estate's right to sue for damages.  The Court cannot resolve this issue of fact. An issue of law, however, is whether Neace's knowledge when she cashed the check matters.

The Court has been unable to locate any Kentucky case law directly on point.  Neace cites *Zurich American Ins. Co. v. Brierly*, 936 S.W.2d 561 (Ky. 1997).  However, in that case, the issue before the Kentucky Supreme Court was "whether the Department of Workers' Claims has original and exclusive jurisdiction to decide whether [the employee's] death resulted from the deliberate intention of his employer to cause such death." *Id*. at 561.

On appeal,  Zurich, the employer's insurance company, argued that the Department of Workers' Claims should determine whether the employee's death resulted from the deliberate intention of his employer.  *Id*. at 562.  Zurich argued that, only after such a finding, could the employee make the election to pursue a civil action under KRS 342.610(4). *Id*. The Kentucky Supreme Court disagreed and held that the trial court could determine whether the claimant's death resulted from the deliberate intention of his employer.  *Id*.

8

Neace most likely relies on the portion of the opinion where the Court addressed Zurich's argument that the employee should not be able to waive the employer's rights under the statute by filing a tort action without a finding that the employer intentionally caused the employee's injury. *Id*. at 563.  The court answered that the primary purpose of the Workers' Compensation Act was to aid employees and that the option of whether to proceed under the Act or in court belonged solely to the employee. *Id*.

Here, however, UGS, Inc. does not argue that it should have the option of proceeding under the Act even if the estate has chosen to pursue a remedy in court.  UGS, Inc. argues that the estate actually made the choice to proceed under the Act by cashing the check delivered to it by AmComp.

UGS, Inc. cites *Borman v. Interlake, Inc.*, 623 S.W.2d 912 (Ky. App. 1981).  The Court assumes that it relies specifically on the court's statement, "in passing," that the employee's estate was prohibited from asserting a claim that the employer intentionally caused the employee's death "because workers' compensation benefits had already been accepted." *Id*. at 913. However, that case does not state whether the employee's estate actually filed a claim for workers' compensation benefits or whether the estate and the employer had entered into an agreement on such benefits. Further, it does not discuss the estate's knowledge at the time that the benefits were accepted.

UGS, Inc. also cites *Ruffing v. Movie Gallery US Inc.,* 2006 WL 1675187 (E.D. Ky. June 16, 2006). The Court assumes that UGS, Inc. relies specifically on the court's finding that the plaintiff was foreclosed from pursuing a civil action where there was evidence that the plaintiff had "received and accepted workers' compensation benefits." *Id*. at * 2.   However, again, the case does not state whether the employee actually filed a claim for workers' compensation benefits or whether the employer and employee entered into an agreement on such benefits. Further, it does not address

9

the employee's knowledge at the time the benefits were accepted.

Accordingly, the Court does not read *Borman* or *Ruffing* to hold that an employee waives his right to pursue a civil action against his employer by simply cashing a workers' compensation check regardless of his knowledge of the consequences at the time of acceptance.

Both parties cite *Preston v. Elm Hill Meats, Inc.*, 420 S.W.2d 396 (Ky. 1967).  That case, while not exactly on point, is somewhat helpful in resolving the issue before the Court.  In that case, the employee sued his employer for damages after he was injured at work.  The employer relied on a statute then in force which, similar to KRS 342.610(4), provided that:

> If any minor employee is injured or killed while being employed by the employer in willful and known violation of any law of this state regulating the employment of minors, the statutory guardian or personal representative of *the minor may claim compensation under this chapter or may sue to recover damages as if this chapter did not exist. If a claim for compensation is made under this section, the making of such claim shall be a waiver and bar to all rights of action on account of that injury or death as to all persons*.

*Id*. at 397 (emphasis added).

The employee argued that he had not made any claim for benefits and that his employer's insurance company fraudulently induced his mother, who was his statutory guardian, into signing an agreement to take the benefits and did not inform her that she could instead sue for damages. *Id*.

The Kentucky Supreme Court held that "the acceptance of compensation through an agreement approved by the Workmen's Compensation Board was as effective legally as filing a claim. . . in both instances it is an award of the Board, so effective as such." *Id*.

In addressing the employee's claim that the agreement at issue was procured by fraud and that his mother was not informed she was waiving the right to sue for damages, the court looked at the mother's affidavit and concluded that it was clear she accepted the workers' compensation

10

benefits because she wanted prompt medical services and rehabilitation training as well as compensation. *Id*.  The court further stated, "[w]e have carefully considered the affidavits filed in this record, and we do not feel that any acts or statements made by the adjuster would constitute fraud."  *Id*. at 398. Accordingly, *Preston* indicates that simply accepting workers' compensation benefits does not necessarily work a waiver of the right to sue at least where the employee charges that he was fraudulently induced to agree to accept such benefits. In such cases, Kentucky courts would inquire into the knowledge and intent of the recipient of the benefits.

Looking just to the language of KRS 342.610(4), it  indicates that the estate must make an actual claim for workers' compensation benefits in order to be deemed to have waived the right to sue.  The statute provides that, "[*if*] *a claim is* made for the payment of compensation or any other benefit provided by this chapter, all rights to sue the employer for damages on account of such injury or death shall be waived as to all persons." KRS 342.610(4)(emphasis added).

As noted above, in *Preston*, the Kentucky Supreme Court held that "the acceptance of compensation through an agreement approved by the Workmen's Compensation Board was as effective legally as filing a claim. . . ." *Preston*, 420 S.W.2d at 397.  But the Court has been unable to locate any Kentucky case holding that merely cashing the insurance company's check is the same as filing a claim and, thus, a waiver of the right to assert a court action under KRS 342.610(4).

Other jurisdictions have held that:

The mere acceptance of some compensation benefits is not enough to constitute an election; there must also be evidence of conscious intent to elect the compensation remedy and to waive other rights.  Acceptance of compensation and medical benefits by an employee cannot be held to be an election by the employee to pursue a remedy under a workers' compensation statute if he or she is unaware that he or she is receiving benefits under the statute.

11

101 C.J.S. Workers' Compensation § 1620 (collecting cases)(footnotes omitted).

Given these considerations, it is likely that Kentucky courts would hold that the estate's mere acceptance of compensation benefits does not constitute a waiver of the right to pursue a tort action where the waiver is not a knowing one. In its Motion for Summary Judgment, UGS, Inc. has not produced any case law to the contrary.

Neace asserts in response to UGS, Inc.'s Motion for Summary Judgment that AmComp informed her that a workers' compensation claim had been filed regarding her son's death and that she was unaware when she cashed the check from AmComp that, by doing so, she was waiving any right to sue UGS, Inc. for tort damages. Because there is an issue of fact at to Neace's knowledge at the time she cashed the check from AmComp, UGS, Inc.'s Motion for Summary Judgment must be denied as to the claims asserted against it by Neace.

There is no issue as to Tina Dilts' knowledge when she cashed the check AmComp sent her. Accordingly, for all the reasons stated above, the Court will GRANT UGS, Inc.'s Motion for Summary Judgment as to the claims asserted against it by Tina Dilts, both Individually and as administrator of the Dilts' Estate, and as to the claims asserted against it by and on behalf of Dilts' children.

## II.        MOTION TO DISMISS BY UGS, LLC (Rec. No. 65).

In its Motion to Dismiss the claims against it, UGS, LLC argues that it had nothing to do with the incident that forms the basis of the Plaintiffs' claims. In its motion, UGS, LLC states that, at the time of the incident, Collins and Dilts were performing work on a site that was owned by Defendant NAS and that the general contractor on the project was Siemens. UGS, LLC states that Siemens subcontracted a portion of the project to Defendant UGS, *Inc.* UGS, LLC explains that it was UGS,

*Inc.* that employed Collins and Dilts, not UGS, LLC.

In support of its motion, UGS, LLC submits what it asserts is the contract between UGS, Inc. and Siemens.  UGS, LLC argues that the contract shows that UGS, Inc. was the entity that contracted with Siemens, not UGS, LLC.  UGS, LLC also submits an affidavit by Daniel M. Freese, who states he is the President of UGS, LLC. Freese states that UGS, LLC was not a subcontractor on the project and had no involvement with the project.

The contract which UGS, LLC relies upon is a document dated February 3, 2006 titled Purchase Order which contains the name "United Group Services, Inc." at the top and also states, "Ship to: North American Stainless."  The first page of the Purchase Order states that it was  issued "to confirm the verbal agreement between Voest-Alpine Industries, Inc. (VAII) and United Group Services (UGS). . ."  This provision does not specify whether the party to the agreement is UGS, LLC or UGS, Inc.

Each page of the document is signed by a representative of Voest-Alpine Industries, Inc. Each page also contains a signature line titled "vendor acceptance," which appears to have been signed by Freese.  The vendor is not identified.  The signature, however, appears to be the same as the signature on Freese's affidavit.

Page 11 of the Purchase Order states, "A tax exempt certificate for this project is attached to this Purchase Order and made an integral part of the Order." The attached "Certificate of Exemption" identifies North American Stainless as the Manufacturer or Production Processor; Voest-Alpine Industries, Inc. as the Contractor; and United Group Services, LLC as the subcontractor.

The Dilts estate filed a response to UGS, LLC's motion in which they argue that the Court

13

should not consider on a Motion to Dismiss the contract submitted by UGS, LLC because it is not referenced in or central to their Complaint. The Court need not decide this issue, however, because, neither the contract nor Freese's affidavit establish as a matter of law that UGS, LLC was not involved with the project at issue.

Each page of the Purchase Order is signed by Freese, who states in his affidavit he is president of UGS, LLC. In addition, the Certificate of Exemption, which is made an integral part of the Purchase Order, identifies United Group Services, LLC as the subcontractor.

Accordingly, the Court cannot rule at this time as a matter of law that UGS, LLC had nothing to do with the incident involved. UGS, LLC has not moved for its dismissal on any other basis. Accordingly, its Motion to Dismiss the claims made by Tina Dilts, both individually and as administrator of the Dilts' Estate, and the claims made by and on behalf of Dilts' children will be denied.

The Plaintiff Neace, however, did not respond on behalf of the Collins' estate to UGS, LLC's Motion to Dismiss. Accordingly, the Court finds that the Collins' estate has waived its opposition to the Motion to Dismiss and the motion will be granted as to the claims of the Collins' estate against UGS, LLC. *See Humphrey v. U.S. Attorney General's Office*, 2008 WL 2080512, at * 3 (6th Cir. 2008)(citing *Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989)("if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion").

### III. MOTION FOR JUDGMENT ON THE PLEADINGS BY MAXIM; UGS, LLC; AND NAS (Rec. No. 72).

Defendant Maxim has filed a Motion for Judgment on the Pleadings and Defendants UGS, LLC and NAS have joined in the motion.

14

In its motion, Maxim moves the Court, pursuant to Federal Rule Civil Procedure 12(c) to enter judgment in its favor on any claim by the Plaintiff Tina Dilts for damages for loss of spousal consortium and any claim by the Plaintiffs for damages for the pre-impact fear of death.

Federal Rule 12 (c) provides that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The same standard applies to motions to dismiss brought under Federal Rule Civil Procedure 12(b)(6) and Rule 12(c). *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 & 438 (6th Cir.2007).

Under Kentucky law, a spouse cannot recover damages for loss of consortium extending beyond the date of death. *Brooks v. Burkeen*, 549 S.W.2d 91, 92 (Ky. 1977), *overruled on other grounds by Giuliani v. Guiler*, 951 S.W.3d 318 (1997).  This is because loss of consortium damages are intended "to compensate for that period of time while the injured spouse was still alive but incapable of fully participating with the other spouse in conjugal relations attendant to the marital status." *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 252 (Ky.1995).  Thus, under Kentucky law, there is no cause of action for loss of consortium where the spouse dies instantaneously following the tortious injury. *Brooks*, 549 S.W.2d at 92.

In her response, Tina Dilts may be arguing that this Court should find that the Kentucky Supreme Court would now recognize damages for post-death spousal consortium in light of its decision in *Giuliani*.  In *Giuliani*, the Kentucky Supreme Court recognized for the first time the right of minor children to recover damages for the loss of parental consortium following the death of a parent. 951 S.W.2d 318, 323 (Ky.1997). However, the case did not address a claim for post-death spousal consortium.  At this time, "Kentucky law is clear that a claim of loss of spousal consortium does not reach beyond death." *In re Air Crash at Lexington, Kentucky, August 27, 2006*  556

15

F.Supp.2d 665, 671 (E.D.Ky. 2008).

There does not appear to be any dispute that Dilts died shortly after the fall. Accordingly, the Motion for Judgment on the Pleadings will be granted as to any claim by the Plaintiff Tina Dilts, individually, for damages for loss of spousal consortium.

As to the Plaintiffs' claim for damages for pre-impact fear of death, the Kentucky Supreme Court's decision in *Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920 (Ky. 2007) makes clear that there can be no recovery for emotional distress that occurs before an injury-causing contact. *Id.* at 929. "The rationale for the current rule is that pre-impact fear, like other alleged negligently caused emotional distress, is possibly trivial and simply too speculative and difficult to measure unless is it directly linked to and caused by a physical harm." *Id.*

Accordingly, any claim by the Plaintiffs to recover damages for the emotional distress suffered by Dilts or Collins prior to the impact that caused their deaths must be dismissed.

## IV.   CONCLUSION.

For all these reasons, the Court hereby ORDERS as follows:

1)   UGS, Inc.'s Motion for Summary Judgment is GRANTED in part and DENIED in part (Rec. No. 54) as follows:

   a)   The motion is DENIED as to the claims asserted against UGS, Inc. by Neace on behalf of the Collins' estate;

   b)   The motion is GRANTED as to the claims asserted against UGS, Inc. by Tina Dilts, both individually and as administrator of the Dilts' Estate, and as to the claims asserted against UGS, Inc. by and on behalf of Dilts' children and those claims are hereby DISMISSED.

16

2)    UGS, LLC's Motion to Dismiss (Rec. No. 65) is GRANTED in Part and DENIED in part as follows:

    a)    The motion is DENIED as to the claims made against UGS, LLC by Tina Dilts, both individually and as administrator of the Dilts' Estate, and the claims made by and on behalf of Dilts' children.

    b)    The motion is GRANTED as the claims made against UGS, LLC by Sandi Neace as the administrator of the Collins' estate and those claims are hereby DISMISSED;

3)    The Motion for Judgment on the Pleadings (Rec. No. 72) filed by Maxim and joined by UGS, LLC and NAS is GRANTED. Any claim by the Plaintiff Tina Dilts, individually, for damages for loss of spousal consortium is hereby DISMISSED and any claim by the Plaintiffs for damages for the emotional distress suffered by Dilts or Collins prior to the impact that caused their deaths is DISMISSED.

Dated this 22nd day of September, 2008.

**Signed By:**

**_Karen K. Caldwell_**   *KKC*

**United States District Judge**