UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at FRANKFORT

CIVIL ACTION NO. 07-38

TINA DILTS, as Ancillary Administratrix and
Personal Representative of the Estate of Rickie Dilts, et al.,   PLAINTIFFS,

v.   **OPINION AND ORDER**

MAXIM CRANE WORKS, L.P., et al.,   DEFENDANTS.

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the Plaintiff Tinna[1] Dilts's Motion for Sanctions against the Defendant Maxim Crane Works, L.P. (DE 179); Maxim's motions to strike or exclude the expert report of Gary Friend, P.E. (DE 187) and to exclude the report and testimony of Gary Friend, P.E. (DE 236); and several related motions.

For the following reasons, all the motions will be denied.

**I.     Background.**

Rickie Dilts and Matthew Collins were employed by the Defendant UGS, Inc. On or about July 28, 2006, Dilts and Collins were assigned to work at Defendant North American Steel's plant in Carroll County, Kentucky. At the NAS plant, Dilts and Collins were working approximately 80 feet from the ground on the assembly of the roof of a structure referred to as the "doghouse."

The doghouse is a large steel structure built inside the factory at NAS that houses an electric arc furnace used to melt stainless steel. It is made of separate metal panels weighing between 1,000 and 6,000 pounds. (R. 166, Response, Ex. A, Gunn Dep. at 45; Ex. C, Corrales Dep. at 16). Dilts and Collins were re-setting the roof panel. The panel was lifted into place on the doghouse by a crane. Dilts and Collins were on the roof panel when it fell, causing them to fall 80 feet to the concrete floor. Dilts and Collins died as a result of the fall.

---

[1] In the Complaint, the named Plaintiff is "Tina" Dilts. In the subsequent pleadings, including the motion currently before the Court, Dilts is referred to as "Tinna" Dilts.

The original Plaintiffs in this matter included Sandi Neace, Collins's mother, as the administrator of his estate. However, pursuant to an Agreed Order (Rec. No. 148), Neace's claims were dismissed. The remaining Plaintiffs in this action are Tinna Dilts, who was Rickie Dilts's wife, and Rickie Dilts, Jr. Tinna Dilts pursues claims individually, as administrator of Dilts's estate, and as next friend of Dilts's minor children.

The Plaintiffs named five defendants: UGS, Inc.; NAS; UGS, LLC; Siemens Energy & Automation, Inc.; and Maxim.

UGS, Inc. was Dilts's employer. NAS owned the factory where the incident occurred. Maxim owned the crane that lifted the roof panel and put it into place and was also the employer of crane operator Travis Gunn (Rec. No. 116, Maxim Mot. For Summ. J. at 1).

The Plaintiffs asserted a negligence claim against all of the Defendants. However, by Opinion and Order dated September 22, 2008 (Rec. No. 137), this Court dismissed the Plaintiffs' negligence claims against UGS, Inc., the employer of Dilts, finding that the Plaintiffs received workers' compensation death benefits from UGS, Inc.'s insurance carrier and, thus, they were barred from bringing any tort claim against UGS, Inc. under the exclusivity provision of the Kentucky Workers' Compensation Act, KRS 342.0011, *et seq*.

**II.     Dilts's Motion for Sanctions (DE 179).**

The Plaintiff Tinna Dilts moves for sanctions against Defendant Maxim for spoliation of evidence. Dilts asserts that Maxim willfully or negligently:

1)   removed the crane from the accident scene (DE 179 ¶ 7) "at the request of Defendants UGS or UIP;" (DE 179 ¶ 9 and p.9);

2)   failed to document or photograph the crane's computer display or the information it contained (DE 179 ¶ 13 and p. 10);

3)   failed to preserve or photograph the shackle pin (DE 179 ¶ 20 and p. 11) which connected the crane shackle to the roof panel that fell (DE 179 at ¶18 and p. );

4)   "purged by destruction all of the NAS compliance audit forms." (DE 179 at ¶ 24); and

5)   failed to retrieve the information from the crane's computer (DE 179 ¶ 16), also

called an LMI or RCI (DE 179 ¶ 10), by connecting it with "an external computer to retrieve the entire operating history of the crane." (DE 179 ¶15).

Dilts asks the Court to sanction Maxim by instructing the jury either that it should either accept, presume, or infer that spoiled evidence would have tended to prove the Plaintiffs' case.

Dilts begins her motion by arguing that Kentucky law governs the issue of spoliation of evidence and the range of appropriate sanctions. And that was a true statement of law at the time that Dilts filed her motion. *See, e.g., One Beacon Ins. Co. v. Broadcast Development Group*, Inc., 147 Fed. Appx. 535 (6th Cir. 2005). However, since that time, the Sixth Circuit, in an *en banc* opinion, overturned its prior rulings on this issue and held that federal law of spoliation applies to cases litigated in federal court. *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009).

The sanction that Dilts seeks is an adverse inference instruction. "An adverse inference for spoliation of evidence, or a spoliation inference, permits a [factfinder] to infer that destroyed evidence might or would have been unfavorable to the position of the offending party."*Bankcorpsouth Bank v. Herter*, 2009 WL 1596654 at *14 (W.D. Tenn. 2009)(quoting *Kounelis v. Sherrer*, 529 F.Supp.2d 503, 520 (D.N.J.2008)).

There is a split among the circuits regarding the degree of culpability required to warrant an adverse inference instruction. For example, the Fifth Circuit requires the party seeking the adverse inference instruction to show that the party who allegedly spoiled the evidence acted in "bad faith." *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556  (5th Cir. 2003); *See also Anderson v. Production Management Corp.*, 2000 WL 492095 at * 3 (E.D. La. 2000)(recognizing that circuits are split on issue of whether a showing of bad faith or willfulness is required in order to permit fact-finder to draw an inference adverse to destroying party); *See also  Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir.1997)(an adverse inference may be drawn from failure to preserve evidence if absence of that evidence is predicated on bad faith but "'[m]ere negligence' in losing or destroying the records is not enough for an adverse inference as 'it does not sustain an inference of consciousness of a weak case.'").

3

The Second Circuit, on the other hand, has stated that "[t]he sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence." *Residential Funding Corp. v. Degeorge Financial Corp.*, 306 F.3d 99, 108 (2nd Cir.2002)

After *Wolever*, some district courts in this circuit have followed the Second Circuit's analysis in *Residential Funding. See e.g. Bancorpsouth Bank v. Herter*, – F.Supp.2d – 2009 WL 1596654 at *15 -16 (W.D. Tenn. 2009); *Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd.*, 2009 WL 998402 at *5-6 (E.D.Mich. Apr. 14, 2009); *Smith v. USF Holland, Inc.*, 2009 WL 2170136 at *6 (E.D. Tenn. 2009).

However in *In re National Century Financial Enterprises, Inc.*, 2009 WL 2169174 (S.D Ohio 2009), the court stated that "[g]enerally, a court will not impose an adverse inference with respect to destroyed evidence, unless the party did so in bad faith."*Id*. at * 3 (citing *O'Brien v. Ed Donnelly Enterprises, Inc.*, 2006 WL 2583327, at *3 (S.D.Oh. Sep. 5, 2006) (citing *Eaton Corp v. Appliance Valves Corp.*, 790 F.2d 874, 878 (Fed.Cir.1986); *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir.1985); *S.C. Johnson & Son v. Louisville & Nashville Railroad Co.*, 695 F.2d 253, 258-59 (7th Cir.1982); *Valentino v. United States Postal Service*, 674 F.2d 56, 73 n. 31 (D.C.Cir.1982); and *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir.1975)).

Before attempting to resolve this issue, or asking the parties to further brief the degree of culpability required for an adverse inference instruction, the Court will first determine if Dilts has produced sufficient evidence that Maxim's conduct allegedly leading to the spoliation of the evidence at issue was at least negligent.

**A.      Removal of the Crane from the Accident Scene and Removal of the Rigging.**

Dilts alleges that the crane was removed from the accident site on July 31, 2006, which would have been a few days after the accident.  (DE 179 ¶ 7, 9).  Dilts further alleges that a Maxim crane operator went to the site to move the crane "at the request of Defendants UGS or

4

UIP." (DE 179 ¶ 9). Dilts likewise complains that the "rigging straps and shackles had been removed from the crane."(DE 179 ¶ 7).

Dilts alleges that she was prejudiced by the removal of the crane because the Kentucky OSHA investigator "did not have an opportunity to observe the roof of the 'doghouse' prior to the rigging and crane being removed." (DE 179 ¶ 8). She further states that, removing the crane irretrievably destroyed her ability to know "the exact position of the crane, the position of the boom, [and] the amount of cable that had been extended." (DE 179 at 9). She states she has no other means of discovering this information. Dilts complains that she was prejudiced by the removal of the rigging because "[t]here are no photos or other documentation in existence that set out the exact position of the rigging in relation to the place where the panel fell." (DE 179 at 10).

Numerous photographs were taken of the accident scene and the accident scene was also videotaped. However, in her Reply brief, Dilts makes clear that her precise complaint is that "[t]here is not a single photograph or video that was taken of the boom, cable and rigging positions *from the roof view*." (DE 198, Reply at 8).

Maxim, however, asserts that on the day after the accident, "UGS and its agents took some photographs on top of the roof of the doghouse." (DE 189 at 14). Dilts asserts that UGS has not produced those pictures to in response to her discovery requests.

As evidence that Maxim was at least negligent in moving the crane and rigging, Dilts cites KOSHA investigator Carla Cornett's deposition testimony that she informed the Defendants that her investigation was not complete and that she would be returning to the site. Dilts argues that Maxim was negligent in moving the crane knowing that Cornett had not yet completed her investigation.

Cornett actually testified that she was not certain who she spoke with but that she "would have talked to somebody about coming back or making arrangements." She testified that she "may have" made it known that she was going to come back. However, Cornett also testified

that she never instructed anyone to keep the crane exactly as it was or to leave the scene as it was. Further, Cornett testified that she took video and shot photographs of the scene and was satisfied that she had documented "how the crane was set up that day and positioned, the boom and everything."

Given the evidence that the parties have produced at this time, the Court does not find negligence on the part of Maxim in removing the crane from the accident site. The evidence shows that, prior to the removal of the crane, Cornett videotaped the scene and shot multiple photographs. Cornett was satisfied that the video and photographs sufficiently documented the position of the crane at the time of the accident. Thus, it was not unreasonable for Maxim to find that the accident scene had been documented sufficiently so that it could move the crane when requested to do so by UGS.

Nevertheless, the Court is concerned that UGS took photographs of the scene that it has not produced in response to discovery requests. Accordingly, the Court will order that UGS and all other Defendants produce all photographs, videotape, and DVD of the accident scene that have not yet been produced. If any Defendant produces items not previously produced, then Dilts may file any appropriate motions.

      **B.**      **Failure to Document or Photograph the Crane's Computer Display.**

Dilts asserts that the crane had an onboard computer, called an LMI or RCI that displayed "real time measurements of the load weight, the boom length, the boom angle[,] the cable length and the radius of lift." (DE 179 at ¶10). Dilts complains that no Maxim employee documented the computer display or the information it contained at the time of the accident. (DE 179 ¶13). Dilts also asserts that "[t]his information was automatically stored by the computer and had to be manually destroyed by Maxim in either resetting the computer or moving the crane from its shut down position." Dilts complains that she cannot discover through any other means what information the crane's computer displayed after the accident.

6

To the extent that Dilts complains that Maxim negligently destroyed the computer display, she has failed to present any evidence regarding how Maxim did so. It is unclear whether the information displayed on the computer screen was erased when Maxim turned the crane off or when Maxim restarted the crane some time after the accident or in some other manner. The Court cannot find that Maxim was negligent in destroying the information displayed on the computer screen without knowing how Maxim allegedly destroyed the information.

Dilts's real complaint on the computer display issue seems to be that Maxim did not photograph or record the information on the computer display before it did the acts that caused that information to disappear from the screen. However, Dilts has not showed that this failure was unreasonable. The KOSHA investigator also failed to do either of these things. The Court cannot find that Maxim was negligent in failing to photograph or document the information displayed on the crane computer screen.

      C.    **Failure to Preserve or Photograph the Shackle Pin.**

Dilts also complains that Maxim failed to preserve one of the two shackle pins that connected the shackle to the roof panel. There does not appear to be any dispute that the pin was lying on the ground after the accident and was videotaped and photographed by KOSHA investigator Cornett. Maxim asserts it never had possession of the pin after the accident. It further asserts that the area where the pin was located was cordoned off and that no one from Maxim touched the pin after the accident. Maxim further asserts that the pin was owned by UGS and that the building was owned by NAS. Thus, Maxim argues, it had no duty to preserve the pin.

Dilts argues that Maxim was the party responsible for preserving the pin because, just prior to the accident, it was attached to Maxm's crane. At some point, however, the pin became detached from the crane and was lying on the ground when Cornett conducted her investigation.

The building was owned by NAS and it cordoned off the accident area. The pin did not belong to Maxim but to UGS. Thus, the Court cannot find that Maxim was negligent in failing to enter the accident site and exercise control over the pin.

### D. Purge of Audit Forms.

In her motion, Dilts asserts that Maxim Safety Engineer Kale Kelly conducted safety audits at the NAS worksite and completed an audit form for each visit. She asserts that Kelly "purged" all of these audit forms. It is not clear if Dilts argues that the purging of the audit forms warrants a negative inference instruction because Dilts does not mention the audit forms in the "argument" portion of her motion. Nor does she mention them in her reply brief.

There is no dispute that Kelly did purge the audit forms. But he testified that he routinely purged the forms each month. Dilts has presented no evidence regarding the dates that the forms were purged or that any audit forms were purged after the accident. For these reasons, the Court cannot find that Maxim negligently allowed Kelly to purge the audit forms. Thus, to the extent that Dilts requests a negative inference instruction on the basis that the audit forms were purged, that request will be denied.

### E. Failure to Download Information from the Crane's Computer.

Finally, Dilts complains that Maxim did not download information stored in the crane computer despite Dilts's request that it do so. Crane operator Gunn testified that it was possible to download the information stored on the crane computer. However, Gunn later testified that some crane computers can store information and others cannot. Maxim submits the affidavit of Simon Worboys, the Engineering Manager for the Greer Company, which manufactured the particular crane computer at issue. Worboys states that it is impossible to download or otherwise extract information from the crane computer.

The Court finds Worboys' statement regarding the storage capabilities of the crane computer to be more persuasive. He is an engineer and is more familiar with the crane computer.

Further, Gunn indicated that he was unsure of the storage capabilities of this particular crane computer while Worboys' statement addresses the specific crane computer at issue.

Further, if the information from the computer could be downloaded as Dilts asserts, it would appear that could occur at any time. Thus, Dilts does not really complain that Maxim "destroyed" the historical data. Instead, she complains that Maxim did not download it. However, this is a task that Dilts could have performed any time after the accident. She never requested access to the crane computer to do so.

For these reasons, the Court cannot find that Maxim was negligent in failing to download the information from the crane computer.

For all these reasons, Dilts's Motion for Sanctions (DE 179) will be DENIED. Accordingly, Maxim's Motion for Leave to File Surreply (DE 204) will be DENIED as moot.

### III. Maxim's Motions to Strike Expert Report of Gary Friend, P.E. (DE 187) and to Exclude Friend's Report and Testimony (DE 236).

Maxim moved to strike the expert report of Plaintiffs' expert Gary Friend (DE 187) and also to exclude Friend's report and testimony (DE 236). However, on August 28, 2009, Dilts filed a Notice of Withdraw of Expert Witness Gary Friend (DE 260) in which she states she does not intend to call Friend as an expert witness in this case and withdraws Friend as a disclosed expert. Accordingly, Maxim's Motion to Strike/Exclude the Expert Report and Testimony of Gary Friend, P.E. (DE 187) and Motion to Exclude Report and Testimony of Gary Friend, P.E. (DE 236) will be DENIED as moot.

### IV. CONCLUSION.

For all these reasons, the Court hereby ORDERS as follows:

1) Dilts's Motion for Sanctions against Defendant Maxim for Spoliation of Evidence (DE 179) is DENIED;

2) Maxim's Motion for Leave to File Surreply (DE 204) is DENIED as moot;

     3)    Maxim's Motion to Strike/Exclude the Expert Report and Testimony of Gary Friend. P.E. (DE 187); Motion for Hearing (DE 197); and Motion to Exclude the Report and Testimony of Gary Friend, P.E. (DE 236) are all DENIED and  as moot.

     4)    Within ten days of the entry date of this Opinion and Order, all Defendants, including Defendant UGS, Inc,. SHALL produce to the Plaintiffs all photographs, videotape and DVD of the accident scene that have not been produced and SHALL specifically identify any photographs, videotape, and DVD shot from the roof.

Dated this 28th day of September, 2009.

Signed By:
*Karen K. Caldwell*
United States District Judge