UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 07-38

TINA DILTS, as Ancillary Administratrix and
Personal Representative of the Estate of Rickie Dilts, et al.,                               PLAINTIFF,

v.                              **OPINION AND ORDER**

UNITED GROUP SERVICES, LLC., et al.,                               DEFENDANTS.

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion for Summary Judgment filed by Defendant Siemens Energy & Automation ("Siemens") (DE 230). For the following reasons, the Court will GRANT the motion.

I.  BACKGROUND.

In their Complaint, the Plaintiffs assert that Rickie Dilts and Matthew Collins were employed by the Defendant UGS, Inc. On or about July 28, 2006, Dilts and Collins were assigned to work at Defendant North American Stainless's plant in Carroll County, Kentucky. At the North American Stainless ("NAS") plant, Dilts and Collins were working approximately 80 feet from the ground on the assembly of the roof of a structure referred to as the "doghouse."

The doghouse is a large steel structure built inside the factory at NAS that houses an electric arc furnace used to melt stainless steel. According to NAS, the purpose of the doghouse is to capture the fumes and exhaust produced during the melting of stainless steel in the electric arc furnace. (DE 231, Mot. at 3). The doghouse is made of separate metal panels weighing between 1,000 and 6,000 pounds. (R. 166, Response, Ex. A, Gunn Dep. at 45; Ex. C, Corrales Dep. at 16). Dilts and Collins were re-setting the roof panel. The panel was lifted into place on the doghouse by a crane. Dilts and Collins

were on the roof panel when it fell, causing them to fall 80 feet to the concrete floor. Dilts and Collins died as a result of the fall.

The original Plaintiffs in this matter included Sandi Neace, Collins' mother, as the administrator of his estate. However, pursuant to an Agreed Order (Rec. No. 148), Neace's claims were dismissed. The remaining Plaintiffs in this action are Tinna Dilts, who was Rickie Dilts's wife, and Rickie Dilts, Jr. Tinna Dilts pursues claims individually, as administrator of Dilts's estate, and as next friend of Dilts's minor children. The Plaintiffs named five defendants: UGS, Inc.; NAS; UGS, LLC; Siemens; and Maxim Crane Works, L.P.

As stated, the Plaintiffs alleged in their Complaint that UGS, Inc. was Dilts's employer. (Rec. No. 1, Complaint ¶ 2). NAS owned the factory where the incident occurred. NAS entered into a contract with Siemens[1] requiring it to install the electric arc furnace and associated fume exhaust system. (DE 231, Ex. A, Contract, Art. 1.1, 1.2). Siemens then subcontracted with UGS, Inc. which, in turn, subcontracted with Maxim. There is no dispute that the roof panel that fell was lifted and put into place by a crane owned by Maxim. The crane operator was Maxim employee Travis Gunn (Rec. No. 116, Maxim Mot. For Summ. J. at 1).

A Kentucky OSHA compliance officer, Carla Cornett, investigated the accident site. In her report, she recommended that no citations be issued to Siemens, Maxim or NAS. She did, however, recommend that certain citations be issued to UGS, Inc. and those citations were issued.

The Plaintiffs asserted a negligence claim against all of the Defendants. However, by Opinion and Order dated September 22, 2008 (Rec. No. 137), this Court dismissed the Plaintiffs' negligence claims against UGS, Inc., the employer of Dilts, finding that the Plaintiffs received workers'

---

[1] The party named in the contract was Voest-Alpine Industries, Inc. However, Voest-Alpine Industries, Inc. was later acquired by Siemens. Thus, Siemens is the Defendant in this action.

compensation death benefits from UGS, Inc.'s insurance carrier and, thus, they were barred from bringing any tort claim against UGS, Inc. under the exclusivity provision of the Kentucky Workers' Compensation Act, KRS 342.0011, *et seq*.

Siemens now moves for summary judgment in its favor, arguing that it is entitled to the same Workers' Compensation immunity as its subcontractor, UGS, LLC.

## II. STANDARD.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id*. However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6 th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249(1986)).

The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp*., 822 F.2d

at 1435-36.  Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**III.   ANALYSIS.**

In its Motion for Summary Judgment, Siemens argues that the Plaintiffs are barred from bringing any tort claim against it because they received workers' compensation death benefits from UGS, Inc.'s insurance carrier.

For this argument, Siemens relies on the exclusivity provision of the Kentucky's Workers' Compensation Act, KRS 342.0011, *et seq*.  In relevant part, the exclusivity provision states the following:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter *shall be exclusive and in place of all other liability of such employer to the employee*, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.  *For purposes of this section, the term "employer" shall include a "contractor"* covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.

KRS § 342.690(1)(emphasis added).

"The statute makes it plain that if [a company] is a contractor, it has no liability in tort to an injured employee of a subcontractor." *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 461 (Ky. 1986).  This is referred to as "up-the-ladder" immunity.  If a company meets the definition of "contractor" provided in the workers' compensation statutes, then it is deemed to be an "up-the-ladder" employer of its subcontractors' employees and, like any employer, is entitled to immunity from its employees' tort actions.

The statutes define a "contractor" as a "person who contracts with another. . . [t]o have work

4

performed of a kind which is a regular or recurrent part of the work of the [person's] trade, business, occupation, or profession." KRS 342.610(2)(b). Thus, if Siemens contracted with UGS, Inc. to perform work that was a regular or recurrent part of Siemens' business, it is immune from tort liablity to UGS, Inc.'s employees.

The facts material to resolve whether Siemens was a "contractor" are not in dispute. NAS, the property owner, and Siemens entered into a contract whereby Siemens was solely responsible for the installation, professional design services, and supervision of the erection of the electric arc furnace and the associated fume exhaust equipment including all labor and material. (DE 231, Ex. A, Art. 1.4). Siemens, in turn, contracted with UGS, Inc. to provide the necessary installation services.

Siemens submits the affidavit of Don Watts, the contract manager for Siemens, who states that, "from time to time," its contracts for the sale of equipment include installing the equipment. (DE 254, Reply, Ex. A, Watts. Aff.). Watts states that, since he began working for Siemens, the division for which he is Contracts Manager has had approximately eight sales contract which requirement Siemens to install the equipment. (DE 254, Reply, Ex. A, Watts. Aff.). Watts states that he began working for Siemens in 1999. (DE 254, Reply, Ex. A, Watts. Aff.).

Watts states that the division for which he works at Siemens is currently working on a project that requires Siemens to install equipment. He states that he anticipates that Siemens will enter into contracts in the future that will require installation. (DE 254, Reply, Ex. A, Watts. Aff.).

In his deposition, Watts stated that it is not Siemens' "normal business" to do "installation engineering" and that Siemens is "primarily an equipment supplier." (DE 230, Mot., Ex. B, Watts Dep.). Watts stated installation is "not something we prefer to do" but that Siemens agrees to do it "if the client insists." (DE 230, Mot., Ex. B, Watts Dep.). Watts testified that, since the time of the contract at issue in this case, Siemens has entered into contracts that required it to install equipment. (DE 230, Mot.,

5

Ex. B, Watts Dep.).  Watts testified that less than 5 percent of Siemens' contracts require installation. He testified that this was "only a guess." (DE 230, Mot., Ex. B, Watts Dep.).  Watts also testified that Siemens sells "all equipment that would be used in the manufacturing of steel."  (DE 230, Mot., Ex. B, Watts Dep.).

In *General Elec. Co. v. Cain*, 236 S.W.3d 579 (Ky. 2007), the issue before the Kentucky Supreme Court was whether a premises owner was a "contractor" for purposes of KRS 342.610(2)(b). The Court held that, as used in the statute, regular or recurrent work "is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees." *Id*. at 588.

The court also stated, "'regular' means that the type of work performed is a 'customary, usual or normal' part of the premises owner's 'trade, business, occupation, or profession,' including work assumed by contract or required by law." *General Elec. Co. v. Cain*, 236 S.W.3d 579, 586-87  (Ky. 2007).  "Recurrent" means that the work is repeated, though not "with the preciseness of a clock." *Id*. (quoting *Daniels v. Louisville Gas and Elec. Co.*, 933 S.W.2d 821, 824 (Ky. App. 1996).

The Sixth Circuit has held that work being done "periodically," as an "ordinary part of plant maintenance," is regular or recurrent.  *Granus v. North American Philips Lighting Corp.*, 821 F.2d 1253, 1257  (6th Cir.1987).   In *Daniels,* the Kentucky Court of Appeals held that emissions testing was a regular or recurrent part of a contractor's business on the basis of its manager's affidavit stating that testing had occurred on fourteen occasions in 28 years. *Daniels*, 933 S.W.2d at 824.

Watts states that Siemens has entered into contracts requiring its installation services eight times over the last approximately ten years.  He states that Siemens is currently a party to contracts requiring it to perform installation services and that it will enter into such contracts in the future.  Because

6

providing installation services is a part of Siemens' work that is repeated with some degree of regularity, it qualifies as "recurrent."

The Plaintiffs argue that "Siemens cannot provide evidence that it has ever been expected to perform construction and installation work with its own employees" and that, for this reason, it is not entitled to immunity." (DE 247, Response at 15).

In *Cain*, the Kentucky Supreme Court stated that a relevant factor in determining whether work is regular or recurrent is whether the company is "equipped with the skilled manpower and tools to handle the task." 236 S.W.2d at 588. As stated, it also held that regular or recurrent work is work "of a kind that the business or similar businesses would normally perform or be expected to perform with employees." *Id.*

However, previously, in *Fireman's Fund*, the Kentucky Supreme Court determined that whether the contractor had employees perform work that was a regular or recurrent part of its trade or business or whether the contractor hired subcontractors to do such work was a distinction of "no significance." 705 S.W.2d at 461. The court determined that "a person who engages another to perform a part of the work which is a recurrent part of his business, trade, or occupation is a contractor. *Even though he may never perform that particular job with his own employees,* he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation." *Id.* at 462 (emphasis added). *See also Pennington v. Jenkins-Essex Const., Inc.*, 238 S.W.3d 660, 664 (Ky. App. 2006)(citing *Fireman's Fund* and finding "without merit" argument that court could not conclude that painting was a regular or recurrent part of contractor's business since it did not directly employ painters but only subcontracted painting when needed).

*Cain* does not explicitly overturn *Fireman's Fund*. Instead, it indicates that, in determining whether a particular kind of work is regular or recurrent, one factor in the analysis is whether the

7

company normally has employees conduct the work. But, in accordance with *Fireman's Fund*, if work otherwise qualifies as "regular or recurrent," then the fact that it is performed completely by subcontractors is not significant. *See also Burroughs v. Westlake Vinyls, Inc.*, 2008 WL 5192237 at *4 (W.D. Ky. 2008)(post-*Cain* case citing *Fireman's Fund*, and stating, "[e]ven if Defendant never performed its own maintenance work, and only used contractors, it would be a 'distinction without a significance,' so long as the maintenance work done is usually a regular or recurrent part of such a business."); *Kubas v. Klondike Manor, LLC*, 2008 WL 243947 (W.D.Ky. 2008)(stating that fact that contractor does not actually perform the function but subcontracts it instead makes no difference under Kentucky law and rejecting plaintiff's argument that, under *Cain*, because the defendant subcontracted the work at issue to another company, work could not be regular or recurrent).

This interpretation of *Cain* comports with the purpose of the up-the-ladder provisions of the workers' compensation statutes. Just as a contractor is entitled to "up-the-ladder" immunity from tort suits by its subcontractor's employees, it is also subject to "up-the-ladder" liability for securing the payment of workers' compensation to its subcontractor's employees.

The statutes provide that "[a] contractor who subcontracts all or any part of a contract. . . liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter." KRS 342.610(2). The contractor is liable for the payment of workers' compensation benefits to those employees unless the employees' immediate employer has provided workers' compensation coverage. *Cain*, 236 S.W.3d at 585.

The purpose of this provision is "to discourage a contractor from subcontracting work that is a regular or recurrent part of its business to an irresponsible subcontractor in an attempt to avoid the expense of workers' compensation benefits." *Id.* at 585. The purpose is "is not to shield owners or

8

contractors from potential tort liability but to assure that contractors and subcontractors provide workers' compensation coverage." *Id*. at 587.

If, as the Plaintiff proposes, a contractor's work can never be deemed regular or recurrent if the company *always* subcontracts the work at issue, then a contractor can escape up-the-ladder liability for workers' compensation benefits by always subcontracting the work, no matter how customary or usual that work may be.

Because providing installation services was recurrent work at Siemens or work that has been repeated with some degree of regularity, Siemens was a "contractor" on the NAS project for purposes of the Kentucky workers's compensation statutes. Accordingly, it is immune from tort liability to the employees of its subcontractor UGS, Inc., including Dilts.

### IV.     CONCLUSION.

For all these reasons, the Court hereby ORDERS that Siemens' Motion for Summary Judgment (DE 230) is GRANTED and the claims against Siemens are hereby DISMISSED.

Dated this 5th day of February, 2010.

**Signed By:**
*Karen K. Caldwell*  KKC
**United States District Judge**